### PROPER PLACE FOR MAKING TENDER OF PAYMENT.

Circuit Court of Lorain County.

FRED F. THOMAS v. JOHN WATT AND MARY WATT.

Decided, May 8, 1905.

*Tender of Payment Must be Made at Residence of Payee.*

Where no agreement as to place of payment is made, a tender, to be legal, must be made at the residence of the payee; and the fact that the obligor, through a misunderstanding, was at some other place for the purpose, will not excuse the failure to make a tender at the proper place.

*F. F. Thomas* and *Clayton Chapman,* for plaintiff.
*E. H. & H. C. Johnson,* contra.

WINCH, J.; MARVIN, J., and HENRY, J., concur.

Heard on appeal,

In this case we are asked to enforce the performance of a verbal contract between the parties for the sale of a farm in Lorain·county, owned by the defendants.

There is no dispute as to the making of the contract and its terms. Plaintiff introduced evidence as to certain acts of part performance of the contract on his part, which he claims takes it out of the operation of the statutes of frauds, and while what he did is rather insignificant and is explained by defendants as referable to permission given by them to the doing of certain things which should be at plaintiff's risk, if the sale was not consummated—we are inclined to say that plaintiff is right upon this proposition.

There remains but one other thing or proposition in the case, and that is the question of tender. The contract provided that plaintiff should pay to defendants the consideration agreed upon by February 1st, 1903. That day came upon Sunday. The evidence shows that upon the Saturday before that day plaintiff went to the farm of defendants having with him a draft for $1,500 drawn by the American Trust Co. of Cleveland upon the Colonial Trust Co. of New York, properly endorsed and made payable to plaintiff's order. He also had with him a deed properly drawn up to be signed by the defendants. Mr. Watt was away and he saw Mrs. Watt, showed her the draft and told her to go with her husband before one Crandall, a notary public or justice of the peace, and have the deed executed and plaintiff could go there and have the money with him. She said "alright."

The next day, Sunday, plaintiff went to defendant's farm and saw Mr. Watt, or "the Captain" as he is called. As to what then occurred plaintiff testified in substance as follows:

"I told the Captain 1 had a New York draft (perhaps plaintiff showed it to him) the Captain said he didn't believe I had any money; he wanted money the bank would take; I said we can go to New London and get the money; he said no; I want to go to the bank at Wellington; what the Wellington bank will take I will take; 1 said it makes no difference; you can have the money in pennies, if you want to. I will go to Wellington tomorrow."

The witness Wheeler testifies that on said Sunday he over-heard talk between plaintiff and the Captain; plaintiff started away and halloed back, "I will meet you at Wellington, and you can have pennies if you want to, and that Watt said all he wanted was the currency.

The defendant, Captain Watt, testifies to the conversation on Sunday as follows:

"Plaintiff said he had a draft there, slapping his breast pocket; I said I wanted the money and would take what the Wellington bank would take; he said he would get the money at New London and be back Monday; said I could have pennies if I wanted them; I said I would take anything that was legal tender."

It appears in evidence that on Monday plaintiff went to Well-ington with his draft; went to both banks there; waited a rea-sonable time for defendants to tender them the money, and they never came. Captain Watt stayed at home most of Monday, waited for plaintiff, but he never came with the money.

Plaintiff has made no other tender of money than as above stated.

We take it that the law implies that, in a case like this, where no place for tender is agreed upon, it must be made to the de-fendant at his home or residence. Where the parties agree upon another place for tender, it must be made at the place agreed upon.

We find that no sufficient tender was ever made to defendants at their home or residence. Did they agree upon another place for tender? We are of the opinion that the evidence fails to show that their minds met upon that proposition. Doubtless plaintiff thought the tender was to be made at Wellington, and he so testifies; there is nothing in the evidence to show that de-fendants so understood and agreed. We think they understood that plaintiff was going to have his draft cashed either at New London or Wellington, and come back with the money to their home on Monday. The parties doubtless misunderstood each other; such being the case it was the plaintiff's duty to make a tender on the farm. He could have gone there when he returned

from Wellington, as defendant's farm adjoined plaintiff's. Why plaintiff never afterward made any tender to defendants at their home, he does not explain. If he was misled into going to Wellington on Monday by any statements of defendants, the law would have given him a reasonable time thereafter to .make a tender at their home. This he has absolutely neglected and refused to do, although defendants testify that they were willing to receive the money.

For failure to prove a tender or any circumstances excusing one, the petition is dismissed.